UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| REBECCA BOGARD, ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | |
| v. ) | Civil Action No.  SA-20-CV-80-XR |
| ) | |
| KRISTENE BLACKSTONE in her ) | |
| capacity as ASSOCIATE ) | |
| COMMISSIONER OF FAMILY AND ) | |
| PROTECTIVE SERVICES ) | |
| ) | |
|     *Defendant*. | |

**ORDER**

On this date, the Court considered Plaintiff's motion to confirm arbitration award (docket no. 4) and Defendant's motion to dismiss (docket no. 10). After careful consideration, Defendant's motion to dismiss is GRANTED and Plaintiff's motion to confirm arbitration is DISMISSED.

**BACKGROUND**

This is, in essence, a family law dispute. Plaintiff Rebecca Nicole Bogard ("Plaintiff") brought suit against Defendant Kristene Blackstone ("Defendant") in her official capacity as the Associate Commissioner of the Texas Department of Family and Protective Services ("TDFPS"). In May of 2019, TDFPS received a referral for abuse or neglect of Plaintiff's children, and in July TDPFS was granted emergency custody. In August, a full adversary hearing was held in a Texas state court, which named TDFPS as "Temporary Managing Conservator" of Plaintiff's children.

Thereafter, Plaintiff alleged mistreatment of her children, including the provision of vaccines to the children without her consent. *See* docket no. 1-1 at 4. On September 26, 2019, Plaintiff sent Defendant an alleged contract, titled "Conditional Acceptance for the

Value/Agreement/Counter Offer to Acceptance of Offer, Affidavit of Show of Cause Proof of Claim Demand and Contract" (the "contract"). *Id.* at 37–65.[1] These documents, Plaintiff alleges, form a contract between her and Defendant/TDFPS. Though the alleged contract is far-reaching, in essence the contract decided that the prior state court case, in which Plaintiff lost custody of her children, was "void *ab initio*," that Defendant agreed to "stop" and close the state court case, and that Defendant agreed to pay $10,000 per day per child until TDFPS returned custody. *Id.* at 69–70. Plaintiff claims that Defendant "tacitly acquiesced" to the contract by not responding within 72 hours after Plaintiff mailed the alleged contract to Defendant. Docket no. 4 at 2; *see also* docket no. 3 at 2 ("Certification of Non-Response/Non-Performance, Presentment and Consent to Judgment").

Believing that Defendant had breached the alleged contract, Plaintiff sought arbitration. She did so in October 2019 through an arbitration website ("Online Contract Arbitration"). Docket no. 1-1 at 70. Defendant did not participate in the purported arbitration. On November 18, 2019, the alleged arbitrator, Mary Clayton,[2] issued an arbitration award in favor of Plaintiff. *Id.* at 7. The award refers to TDFPS as a "fictitious entity" and claims that because Defendant never appeared for the arbitration (i.e. never submitted any documents), that Defendant defaulted. *Id.* at 9. The

---

[1] Defendant believes Plaintiff obtained this purported contract through the same website she used to arbitrate the dispute. *See* docket no. 10 at 3 n.3 (https://onlinecontractarbitration.com/where-to-get-your-contracts/).

[2] In March, Mary Clayton, the alleged arbitrator in this case, sought to confirm her own arbitration award in the Southern District of Iowa. *See* docket no. 10 at 3 n.4 (citing *Clayton v. Rhoades*, Civ. No. 4:30-cv-00080-RGE-CFB (S.D. Iowa)). The arbitrator in that case was named "Rebecca Bogard" of Devine, Texas—i.e. the very plaintiff in this case. The outcome was similar: the arbitration declared that the state wrongfully took custody of the petitioner's children and granted the petitioner full custody and a large monetary award. *See Clayton*, docket no. 1-4 at 5. Though today the Court need not reach the merits of the underlying arbitration, these discoveries, along with the circumstances of the arbitration itself, cast considerable doubt on the validity of the underlying arbitration.

2

arbitration award granted Plaintiff the following: (1) full custody of her children, (2) a declaration that the entire state court proceeding was void, (3) that the state delete all information regarding Plaintiff's children, (4) that Plaintiff recover $10,000 per child per day in which the state had custody, amounting to $2,000,000, (5) that Plaintiff recover four times that amount for punitive damages, for a total of $8,000,000, (6) that Defendant pay the arbitrator $750 in fees, and (7) that Defendant pay the online arbitration website $700 in costs. *Id.* at 11–12.

Plaintiff then sought to confirm that award, filing suit in this Court on January 21, 2020. Docket no. 4. Defendant did not respond to Plaintiff's motion to confirm the award but instead filed a motion to dismiss. Docket no. 10. The Court will first consider Defendant's motion to dismiss because a determination of the Court's subject matter jurisdiction to hear this dispute is paramount and dispositive in this case.

## ANALYSIS

### I.  Standard of Review

Defendant's motion seeks dismissal under Federal Rule of Civil Procedure 12(b)(1) based on Eleventh Amendment immunity, as well as Rule 12(b)(6) for failure to state a claim. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.* After all, "[i]t is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

The Court must dismiss a case for lack of subject matter jurisdiction "where the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A motion to dismiss for lack of jurisdiction under 12(b)(1) may be decided on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus the Court's resolution of disputed facts. *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). Unlike a 12(b)(6) motion, a court is empowered to consider matters outside the complaint and matters of fact that may be in dispute. *Ramming*, 281 F.3d at 161. The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Stockman*, 138 F.3d at 151.

A party may also move for dismissal where the plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief about the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

**II.    Application**

Defendant argues that Eleventh Amendment sovereign immunity bars Plaintiff's claim for confirmation of the alleged arbitration award.  Docket no. 10 at 6–7. Alternatively, she argues that the Federal Arbitration Act ("FAA") is inapplicable to Plaintiff's alleged arbitration award, and that in any event, an applicant who seeks confirmation of an arbitration award under 9 U.S.C. § 9—as Plaintiff does here—"must demonstrate independent grounds of federal subject-matter jurisdiction" because "the provisions of 9 U.S.C. § 9 do not in themselves confer subject-matter jurisdiction on a federal district court." *Id.* at 8 (quoting *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 969 (9th Cir. 1981)). Though Plaintiff did not respond to Defendant's motion, Plaintiff complaint appears to allege several possible bases of subject matter jurisdiction: diversity jurisdiction under 28 U.S.C. § 1332 (docket no. 1-1 at 1)[3]; 28 U.S.C. § 1343 (*id.* at 13), which provides for jurisdiction in suits authorized by 42 U.S.C. § 1983[4]; and 9 U.S.C. § 9, a provision in the FAA that permits a court to confirm an arbitration award "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." 9 U.S.C. § 9; *see* docket no. 1-1 at 14.[5]

Plaintiff has not met her burden of establishing subject matter jurisdiction through any of the above means. Most importantly, the Eleventh Amendment bars an action in federal court by a citizen of a state against a state or its department or agencies. *Pennhurst State Sch. & Hosp. v.*

---

[3] Plaintiff and TDFPS are both Texas citizens, so diversity jurisdiction is inapplicable.

[4] It is unclear what constitutional or federal statutory provision would provide the basis of Plaintiff's § 1983 claim.

[5] There is no indication that the arbitration included a provision reflecting an agreement between the parties that the award could be confirmed in a federal court pursuant to 9 U.S.C. § 9. Defendant did not even participate in the alleged arbitration, much less agree that any award would be enforceable in federal court.

*Halderman*, 465 U.S. 89, 100–01 (1984). The Eleventh Amendment similarly bars suits seeking damages against employees of state entities in their official capacity. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *see also Stem v. Ahearn*, 908 F.2d 1, 3 (5th Cir. 1990) ("The amendment is not evaded by suing state employees in their official capacity…."). Suits against states and state agencies "are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).[6] Such immunity may only be waived by "the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305–06 (1990) (quoting *Edelman*, 415 U.S. at 673).

As a state agency, TDFPS is entitled to Eleventh Amendment immunity. *Thomas v. Tex. Dep't of Family and Protective Servs.*, 427 F. App'x 309, 312 (5th Cir. 2011) ("TDFPS is undisputedly a state entity that has not waived its immunity."); *see also Stem*, 908 F.2d at 4 ("Texas has not consented to be sued in federal court by residents or nonresident citizens regarding its activities to protect the welfare of children."); *Ramos v. Tex. Dep't of Family and Protective Servs.*, No. 20-CV-232-FB, 2020 WL 2214428, at *2 (W.D. Tex. May 7, 2020) ("Texas has not waived its immunity from suit as to DFPS, meaning it has not made an exception from the State of Texas's general Eleventh Amendment immunity to suits against DFPS in federal court."). And because the claim is brought against Defendant acting in her official capacity, Eleventh Amendment immunity similarly bars Plaintiff's claim because an official capacity suit is the equivalent of suing the

---

[6] Although the *Ex Parte Young* doctrine provides an exception to this immunity rule concerning suits for prospective relief against individual state actors, the doctrine "has no application in suits against…[s]tates and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct and Sewer Auth.*, 506 U.S. at 146.

governmental entity itself. *Thomas*, 427 F. App'x at 312–13 ("Suits against employees of state entities in their official capacity run afoul of the Eleventh Amendment.").

In sum, Defendant—a state official sued in her official capacity—is entitled to Eleventh Amendment immunity from Plaintiff's claims in this Court. Such immunity divests this court of subject matter jurisdiction over this case. *Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011) ("Eleventh Amendment immunity operates like a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state."). The Court, then, has no jurisdiction to consider Plaintiff's motion to confirm the alleged arbitration award, and the case must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (docket no. 10) is GRANTED. Plaintiff's claims are therefore DISMISSED WITHOUT PREJUDICE. Plaintiff's motion to confirm her arbitration award (docket no. 4) is DISMISSED. The Clerk is DIRECTED to enter a final judgment pursuant to Rule 58 and to close this case.

It is so ORDERED.

SIGNED this 20th day of May, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE